IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ROBERT K. KUHLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. |
| OFFICER NICHOLAS HINES | ) | |
| (Star #20257), | ) | |
| OFFICER SERENA CUNNINGHAM | ) | |
| (Star #19306), and the | ) | |
| TOWN OF NORMAL, ILLINOIS, an | ) | |
| Illinois municipal corporation, | ) | JURY DEMANDED |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, ROBERT K. KUHLMAN, by and through LAW
FIRM OF DAVID G. SIGALE, P.C., his attorney, and for his Complaint against the
Defendants, OFFICER NICHOLAS HINES (Star #20257), OFFICER SERENA
CUNNINGHAM (Star #19306), and the TOWN OF NORMAL, ILLINOIS, an
Illinois municipal corporation, states and alleges as follows:

## INTRODUCTION

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the
deprivation under color of law of Kuhlman's Fourth Amendment rights as secured
by the United States Constitution by Hines and Cunningham, who at all relevant
times were Officers with the Normal Police Department.

2.      Specifically, as a result of police misconduct and abuse more fully

1

described below, Kuhlman was unlawfully deprived of his constitutional right to self-defense, causing him to suffer significant injury.

## JURISDICTION & VENUE

3.      The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983; the judicial code, 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the United States; and pendent jurisdiction as provided under 28 U.S.C. § 1367(a). Venue is founded in this judicial Court pursuant to 28 U.S.C. § 1391, as the acts complained of occurred in this District.

## PARTIES

4.      Plaintiff Kuhlman is an adult more than 18 years old with a residence in the Town of Normal, County of McLean, State of Illinois. He was harmed by Hines and Cunningham in McLean County, Illinois.

5.      Defendant Hines is believed at all relevant times to have been a Normal Police Officer, assigned Star # 20257. He harmed Kuhlman in the Town of Normal, County of McLean at all times relevant to this Complaint. He is sued in his individual capacity.

6.      Defendant Cunningham is believed at all relevant times to have been a Normal Police Officer, assigned Star # 19306. She harmed Kuhlman in the Town of Normal, County of McLean at all times relevant to this Complaint. She is sued in her individual capacity.

7.      Defendant Town of Normal, Illinois at all relevant times was a municipal corporation, and the principal employer of the individual Defendants

2

Hines and Cunningham, who at all relevant times were acting under color of law and within the course and scope of their employment with the Town of Normal.

<u>FACTS</u>

8.    On July 17, 2023, at approximately 8:00 P.M., Plaintiff Kuhlman was at home when he received a call from his mother, who also resides in Normal. She was at home when a strange man repeatedly knocked on her back door asking to borrow her phone. Kuhlman's mother actually cracked her back door open and gave him her phone to make a call, hoping he would leave after that. However, the man did not leave, and continued to walk around Kuhlman's mother's house while seemingly talking to himself.

9.    Scared for her safety, and unable to handle the situation herself, Kuhlman's mother called the police. Kuhlman's mother then called Kuhlman, who lives nearby, and told him a strange man, who may have a mental illness and of whom she felt threatened, was on her property and outside her door.

10.    At all relevant times, Kuhlman possessed a Firearm Owners Identification card ("FOID card") pursuant to the Firearm Owners Identification Card Act (430 ILCS 65/1, *et seq.*), and an Illinois concealed carry license ("CCL") pursuant to the Illinois Firearms Concealed Carry Act (430 ILCS 66/1, *et seq.*).

11.    Kuhlman rushed over to his mother's house, with his 18-year-old son accompanying him. On the way, Kuhlman called his mother, and she was more distressed during that call than when she called Kuhlman initially. Kuhlman's mother said to him to "Please hurry!"

3

12.     When Kuhlman arrived at his mother's house, he saw the stranger, sitting in a chair on the back porch by the back door. He was holding a white grocery-type bag, the contents of which Kuhlman was unable to see. Kuhlman told the stranger that he needed to leave the property. The stranger remained on Kuhlman's mother's back porch, and started to reach his hand into his opaque white bag.

13.     Fearing for his safety, and the safety of his mother and unarmed son, he drew his lawfully-possessed concealed firearm on the stranger, and told him to take his hand out of the bag and put the bag down. The man removed his hand but did not relinquish the bag. While covering the stranger with the pistol, Kuhlman waited for the Normal Police Department ("NPD"), which had not yet arrived.

14.     At no time did Kuhlman discharge his firearm, nor at any time did he cause any harm to the stranger, whether with the firearm or otherwise.

15.     Officers from the NPD – including Defendant Hines - arrived at Kuhlman's mother's house, and told Kuhlman to give them his firearm, which he did. The stranger did not turn out to have any weapon in the bag, though Kuhlman could not possibly have known that. The stranger was indeed believed and/or determined by the NPD to be suffering from a mental illness, and the NPD officers had him transported to a local hospital.

16.     The NPD officers, including Hines, returned Kuhlman's firearm to him, and did not arrest or detain him in any way. Kuhlman said goodbye to his mother and went home.

4

17.     However, at some point following the above occurrence, Defendants
Hines and Cunningham submitted a "clear and present danger" report about
Kuhlman to the Illinois State Police ("ISP") through its IL Law Enforcement Agency
Portal, and told the ISP that Kuhlman was a danger to himself or others and that
the ISP should revoke Kuhlman's FOID card, which it did along with Kuhlman's
CCL.

The Clear and Present Danger FOID Prohibitor

18.     The ISP's clear and present danger process allows law enforcement
officers to 'side-step' all judicial safeguards and strip individuals of their Second
Amendment rights for an indefinite period of time by simply filling out forms and
sending documents amongst themselves. More specifically, Illinois' clear and
present danger process allows a law enforcement officer to fill out a form and
transmit it to the ISP — which then decides based on that form whether to revoke
an individual's Second Amendment rights. Illinois' clear and present danger process
thus allows law enforcement officers alone to strip individuals of their Second
Amendment rights without any check by the judiciary. Hines, Cunningham, and the
officers of the NPD are familiar with the Clear and Present Danger prohibitor and
the process involved in invoking it.

19.     Per 430 ILCS 65/1.1:

> Clear and Present Danger is defined by statue as a person
> who: (1) communicates a serious threat of physical violence
> against a reasonably identifiable victim or poses a clear
> and imminent risk of serious physical injury to himself,
> herself, or another person as determined by a physician,

5

clinical psychologist, or qualified examiner; or (2) demonstrates threatening physical or verbal behavior, such as violent, suicidal, or assaultive threats, actions, or other behavior, as determined by a physician, clinical psychologist, qualified examiner, school administrator, or law enforcement official.

20.    Upon information and belief, at no time on or around July 17, 2023 did any physician, clinical psychologist, or qualified examiner determine that Kuhlman communicated a serious threat of physical violence against a reasonably identifiable victim or posed a clear and imminent risk of serious physical injury to himself or another person, nor did Hines or Cunningham have knowledge of facts supporting such a conclusion.

21.    Upon information and belief, at no time on or around July 17, 2023 did any physician, clinical psychologist, or qualified examiner directly or indirectly notify ISP that Kuhlman communicated a serious threat of physical violence against a reasonably identifiable victim or posed a clear and imminent risk of serious physical injury to himself or another person, nor did Hines or Cunningham have knowledge of facts supporting such a conclusion.

22.    Upon information and belief, at no time on or around July 17, 2023 did any physician, psychologist, qualified examiner, school administrator or law enforcement officer notify ISP of facts showing that Kuhlman demonstrated any threatening physical or verbal behavior; any violent, suicidal or assaultive threats or actions; any behavior similar to any threatening physical or verbal behavior; or any behavior similar to any violent, suicidal or assaultive threats or actions, unless

engaging in defense of others with a valid CCL and firearm while not shooting at anyone or even firing the firearm, and subsequently following all police instruction constitutes such behavior, nor did Hines or Cunningham have knowledge of facts supporting such a conclusion.

23.     At no time while Kuhlman was defending his mother's safety - from an individual who was mentally unstable and/or under the influence of drugs - did Kuhlman exhibit any of the above-described behavior. Hines and Cunningham knew this as Hines (A.) did not arrest Kuhlman and (B.) returned Kuhlman's firearm before leaving the scene of Kuhlman's mother's house. Therefore, what Hines wrote and Cunningham approved for the purpose of labeling Kuhlman as a clear and present danger and having his firearm rights revoked was false.

24.     Kuhlman has received a copy of the report written and submitted by Hines, and reviewed and counter-signed by Cunningham as Hines's supervisor. In the report, Hines first characterized the incident as a "well-being check," as opposed to a call from an elderly woman terrified about the mentally-ill stranger at her back door. In fact, at no time in the Clear and Present Danger report did Hines and Cunningham even note that the original call to the NPD came from Kuhlman's mother, or why; nor did the report provide any context of why Hines went to Kuhlman's mother's house in the first place.

25.     Hines and Cunningham noted in the report that "[a]t no point did I see [mentally-ill stranger] as a threat in the couple seconds I saw Robert point the gun at him," as if those were the only "couple seconds" that were relevant to the

7

situation. Hines and Cunningham also falsely wrote and submitted to ISP in the Clear and Present Danger report that Kuhlman was charged with aggravated assault.

26.    In the Clear and Present Danger report, Hines also noted that he "told [Kuhlman] to put the gun down, which he did," and that Kuhlman "complied with all other commands." Finally, Hines noted that Kuhlman said he was in fear for his "grandmother" (sic), and was worried that the stranger was having a mental breakdown, perhaps on drugs, and that he did not know what was in the stranger's bag. Despite these statements, Hines and Cunningham submitted the Clear and Present Danger report, anyway.

27.    According to an Illinois State Police press release dated November 27, 2023: "Between January and September 2023, ISP investigated 10,144 Clear and Present Danger Reports. From those, 4,212 resulted in revoking a card or an application. 4,912 individuals involved in a Clear and Present Danger investigation were found to not have a FOID card or a pending application." https://isp.illinois.gov/Media/CompletePressRelease/876 (last reviewed January 31, 2024).

28.    This means that during that nine-month period, when Kuhlman's FOID card was revoked on this alleged basis, of the 5232 reported persons who had active FOID cards or applications, 80.5% of reported persons had their rights stripped based solely on the reporting police officer's say-so.

29.     While there is no doubt that there are dangerous people in Illinois, Hines and Cunningham knew that Kuhlman – who was lawfully exercising the right of defense of his mother – was not one of them. Upon information and belief, Hines, Cunningham, and the NPD also knew that the mere act of submitting a Clear and Present Danger report about Kuhlman would almost certainly result in his FOID card and Second Amendment rights being stripped by the ISP. Indeed, in submitting the Clear and Present Danger report with maliciousness and in bad faith, this was Hines's and Cunningham's intent.

30.     Despite the wrongfulness of Hines's and Cunningham's Clear and Present Danger report, Kuhlman complied fully with the ISP's revocation and surrendered his combined FOID/CCL and his firearm to the NPD.

Clear and Present Danger Relief Procedures:

31.     ISP's procedure for restoration of Kuhlman's firearm rights – which flips the burden of proof and compels the individual to prove a negative - requires that:

> a.     Kuhlman provide a notarized statement in his own words detailing (i) any and all mental health admissions; (ii) his current mental status and condition; (iii) his mental health history, including any prior treatment or admissions; (iv) whether he has complied with treatment and/or medications; (v) the dates and details of all actual or alleged acts of suicide or violence.
>
> b.     Kuhlman provide the name and address of any agency and the date of any legal action and the county and state where any records are held with respect to any actual or alleged acts of suicide or violence in which law enforcement or the courts were involved.

    c.      Kuhlman provide the name and location of any medical provider with respect to any actual or alleged acts of suicide or violence in which any medical care was provided.

    d.      Kuhlman provide information to support his suitability for the restoration of his firearm rights including evidence that he will not be likely to act in a manner dangerous to public safety and that granting relief would not be contrary to the public interest.

    e.      Kuhlman provide all psychiatric and counseling records related to mental health diagnosis or treatment provided to him during the previous five years.

    f.      Kuhlman submit to and provide a forensic psychiatric evaluation on a specific form, performed by an Illinois licensed psychiatrist or clinical psychologist.

    g.      Kuhlman provide certified copies of any court records that address his mental status or allegations he was threatening to harm himself or others; engaged in violence; or abused alcohol or drugs.

    h.      Kuhlman provide at least two notarized letters from adults who are aware of the circumstances regarding the revocation of his FOID Card that state the adults': (i) full names, dates of birth, and relationships to Plaintiff; (ii) knowledge of the circumstances regarding the revocation of Plaintiff's FOID Card; (iii) opinions of Plaintiff's current mental health condition and risk of his dangerousness to himself or others; and (iv) opinion as to whether Plaintiff's possession of a firearm would be contrary to the public interest.

1230.70(b)(3)(A); https://isp.illinois.gov/StaticFiles/docs/FirearmsSafety/Checklists/Final%20Checklists/C&P%20Less%20Than%205%20Yr%20Prohibitor%20Requirements%20Checklist.pdf

    32.    By so burdening Kuhlman's ability to possess a FOID Card, and

likewise a CCL, Hines and Cunningham have not only unjustifiably denied him his

rights but has potentially effectively imposed a five-year ban – up to as much as an

unending ban - on Kuhlman's right to keep and bear arms for self-defense. At a minimum, Hines and Cunningham have indefinitely denied Kuhlman his rights while he attempts to navigate an intrusive, humiliating, and unwarranted appeal with the Illinois FOID Card Review Board.

33. Kuhlman has been affected by Hines's and Cunningham's actions and deprived of his fundamental right to armed self-defense. Kuhlman is not otherwise prohibited under federal or state law from possessing firearms, and did nothing to remove himself from those persons able to exercise this fundamental right.

34. As a result of Hines's and Cunningham's actions and directions, Kuhlman suffered from violations of his constitutional rights leaving him unable to defend himself or his family against physical threat with a firearm if necessary and otherwise enjoy his Second Amendment right, plus physical and emotional harm.

## COUNT I – DEPRIVATION OF RIGHT TO KEEP AND BEAR ARMS (42 U.S.C. § 1983; U.S. CONST. AMEND. II, XIV)

35. Kuhlman incorporates and realleges the allegations of Paragraphs 1 through 34 of this Complaint, inclusive, as if fully restated herein.

36. The act of Defendants Hines and Cunningham in stripping Kuhlman of his FOID card, CCL, and his Second Amendment rights through the wrongful submission of a Clear and Present Danger report to the ISP, despite lacking any facts that Kuhlman was actually a threat or danger to anyone, violated Kuhlman's rights under the Second Amendment to arm himself with a firearm in the case of

confrontation, and to possess a firearm for lawful purposes including but not limited to self-defense, and thus violated 42 U.S.C. § 1983.

37.    Hines and Cunningham, under the color of law, have deprived and are depriving Kuhlman of his clearly-established right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Kuhlman was and is thus damaged in violation of 42 U.S.C. §1983.

38.    The actions of Defendants Hines and Cunningham were the direct and proximate cause of the violations of Kuhlman's Second Amendment rights, his injuries, mental suffering, anguish and humiliation, loss of personal freedoms, and expenses, as set forth more fully above. Kuhlman has been/is thus damaged in violation of 42 U.S.C. §1983.

WHEREFORE, the Plaintiff, ROBERT K. KUHLMAN, pursuant to 42 U.S.C. § 1983, requests this Honorable Court to enter judgment against the Defendants, OFFICER NICHOLAS HINES (Star #20257) and OFFICER SERENA CUNNINGHAM (Star #19306), and to award Kuhlman actual or compensatory damages against Hines and Cunningham, and because they acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action, plus attorney's fees pursuant to 42 U.S.C. § 1988, and such other and additional relief as this Court deems just and proper, including but not limited to a recoupment of all costs expended in prosecuting this action.

## COUNT II – WILLFUL AND WANTON CONDUCT (STATE LAW)

39.    Kuhlman incorporates and realleges the allegations of Paragraphs 1

12

through 34 of this Complaint, inclusive, as if fully restated herein.

40.     Hines and Cunningham knew that Kuhlman - in defending his mother from a trespasser who exhibited signs of mental illness and was carrying a bag which may have contained a weapon – was not a clear and present danger under Illinois law, and was in fact exercising reasonable defense of another person.

41.     Despite this knowledge, Hines and Cunningham willfully and wantonly submitted a Clear and Present Danger report to the ISP, knowing it would result in Kuhlman's FOID, CCL, and Second Amendment rights being stripped away from him.

42.     As a proximate result of Hines's and Cunningham's willful and wanton conduct, Kuhlman's FOID and CCL were revoked by the ISP, which resulted in Kuhlman suffering the loss of his Second Amendment rights, other injuries, mental suffering, anguish and humiliation, loss of personal freedoms, and expenses, as set forth more fully above.

WHEREFORE, the Plaintiff, ROBERT K. KUHLMAN, requests this Honorable Court to enter judgment against the Defendant, OFFICER NICHOLAS HINES (Star #20257) and OFFICER SERENA CUNNINGHAM (Star #19306), and to award Kuhlman actual or compensatory damages against Hines and Cunningham, plus such other and additional relief as this Court deems just and proper, including but not limited to a recoupment of all costs expended in prosecuting this action.

13

## COUNT III - INDEMNIFICATION PURSUANT TO 745 ILCS 10/9-102 (TOWN)

43.     Kuhlman incorporates and realleges the allegations of Paragraphs 1 through 42 of this Complaint, inclusive, as if fully restated herein.

44.     The Town was the employer of Defendants Hines and Cunningham at all times relevant to this Complaint.

45.     Defendants Hines and Cunningham committed the acts alleged above under color of law and in the scope of their employment as employees of the Town's Police Department.

46.     Illinois law, specifically Section 9-102 of the Illinois Tort Immunity Act (745 ILCS 5/9-102) provides that public entities are directed to pay any tort judgment for compensatory damages for which the Town or its employees – including police officers - is liable within the scope of their employment activities, including associated attorney's fees and costs.

47.     Town is therefore liable to Kuhlman in the amount of any tort judgment or settlement, including associated attorney's fees and costs, for which Hines and/or Cunningham are liable.

48.     Due to Town's duty of indemnification of Hines and Cunningham under 745 ILCS 10/9-102, Town is a necessary party to this action.

WHEREFORE, Plaintiff, ROBERT K. KUHLMAN, pursuant to 745 ILCS 10/9-102, requests this Honorable Court enter judgment in his favor and against the Defendant, TOWN OF NORMAL, ILLINOIS, in the amount awarded to Kuhlman against Defendants Hines and/or Cunningham as damages, attorney's fees, costs and interest, and/or for any settlement entered into between Kuhlman and Hines and/or Cunningham and for whatever additional relief this Court deems equitable and just.

**PLAINTIFF DEMANDS TRIAL BY JURY PURSUANT TO F.R. CIV. P. 38(b).**

Dated: February 6, 2024                    Respectfully submitted,


                                   /s/ David G. Sigale
                                   Attorney for Plaintiff


David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
630.452.4547
dsigale@sigalelaw.com

15

## <u>VERIFICATION</u>

Plaintiff, by his signature below, swears that he has read the foregoing Complaint; has understood it to the best of his ability as a non-lawyer. He agrees, under penalty of law that based on his understanding of the Complaint, the contents are truthful, accurate and are based on his best recollection of the events described.

Robert K. Kuhlman

Date:  February 6, 2024

16