IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DIVISION OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ROBERT K. KUHLMAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:24 CV 1065-JBM-JEH |
| | ) | |
| OFFICER NICHOLAS HINES | ) | |
| (Star #20257), | ) | JURY DEMANDED |
| OFFICER SERENA CUNNINGHAM | ) | |
| (Star #19306), and the | ) | |
| TOWN OF NORMAL, an Illinois | ) | |
| municipal corporation, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

NOW COMES the Plaintiff, ROBERT K. KUHLMAN, by and through LAW FIRM OF DAVID G. SIGALE, P.C., his attorney, and for his Response to the Defendants' F.R. Civ. P. 12(b)(6) Motion to Dismiss, state as follows:

### INTRODUCTION

Defendants make the claim of qualified immunity, but there are multiple clearly-established rights violated by them, which directly resulted in the loss of Kuhlman's rights and freedoms under the Second Amendment to the United States Constitution, *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010) and *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

Because of these violations, Kuhlman has stated a valid claim, and Defendants' Motion to Dismiss should be denied.

## STATEMENT OF FACTS

Kuhlman's Complaint (Dkt #1) is incorporated as if fully restated herein. However, a summary of Kuhlman's allegations follows:

- Plaintiff Kuhlman is an adult more than 18 years old with a residence in the Town of Normal.

- Defendants Hines and Cunningham were at all relevant times Normal Police Officers, and at all relevant times were acting under color of law and within the course and scope of such employment.

- On July 17, 2023, at approximately 8:00 P.M., Plaintiff Kuhlman was at home when he received a call from his mother, who also resides in Normal. She was at home when a strange man repeatedly knocked on her back door asking to borrow her phone. Kuhlman's mother actually cracked her back door open and gave him her phone to make a call, hoping he would leave after that. However, the man did not leave, and continued to walk around Kuhlman's mother's house while seemingly talking to himself.

- Scared for her safety, and unable to handle the situation herself, Kuhlman's mother called the police. Kuhlman's mother then called Kuhlman, who lives nearby, and told him a strange man, who may have a mental illness and of whom she felt threatened, was on her property and outside her door.

- At all relevant times, Kuhlman possessed an Illinois FOID card and an Illinois concealed carry license ("CCL").

- Kuhlman rushed over to his mother's house, with his 18-year-old son accompanying him. On the way, Kuhlman called his mother, and she was more distressed during that call than when she called Kuhlman initially. Kuhlman's mother said to him to "Please hurry!"

- When Kuhlman arrived at his mother's house, he saw the stranger, sitting in a chair on the back porch by the back door. He was holding a white grocery-type bag, the contents of which Kuhlman was unable to see. Kuhlman told the stranger that he needed to leave the property. The stranger remained on Kuhlman's mother's back porch, and started to reach his hand into his opaque white bag.

- Fearing for his safety, and the safety of his mother and unarmed son, he drew his lawfully-possessed concealed firearm on the stranger, and told him to take his hand out of the bag and put the bag down. The man removed his hand but did not relinquish the bag. While covering the stranger with the pistol, Kuhlman waited for the Normal Police Department ("NPD"), which had not yet arrived.

- At no time did Kuhlman discharge his firearm, nor at any time did he cause any harm to the stranger, whether with the firearm or otherwise.

- Officers from the NPD – including Defendant Hines - arrived at Kuhlman's mother's house, and told Kuhlman to give them his firearm, which he did. The stranger did not turn out to have any weapon in the bag, though Kuhlman could not possibly have known that. The stranger was indeed believed and/or

3

determined by the NPD to be suffering from a mental illness, and the NPD officers had him transported to a local hospital.

- The NPD officers, including Hines, returned Kuhlman's firearm to him, and did not arrest or detain him in any way. Kuhlman said goodbye to his mother and went home.

- However, at some point following the above occurrence, Defendants Hines and Cunningham submitted a "clear and present danger" report about Kuhlman to the Illinois State Police ("ISP") through its IL Law Enforcement Agency Portal, and told the ISP that Kuhlman was a danger to himself or others and that the ISP should revoke Kuhlman's FOID card, which it did along with Kuhlman's CCL.

The Clear and Present Danger FOID Prohibitor

- The ISP's clear and present danger process allows law enforcement officers to 'side-step' all judicial safeguards and strip individuals of their Second Amendment rights for an indefinite period of time by simply filling out forms and sending documents amongst themselves. More specifically, Illinois' clear and present danger process allows a law enforcement officer to fill out a form and transmit it to the ISP — which then decides based on that form whether to revoke an individual's Second Amendment rights. Illinois' clear and present danger process thus allows law enforcement officers alone to strip individuals of their Second Amendment rights without any check by the judiciary. Hines, Cunningham, and the

officers of the NPD are familiar with the Clear and Present Danger prohibitor and the process involved in invoking it.

- Per 430 ILCS 65/1.1:

   > Clear and Present Danger is defined by statue as a person who: (1) communicates a serious threat of physical violence against a reasonably identifiable victim or poses a clear and imminent risk of serious physical injury to himself, herself, or another person as determined by a physician, clinical psychologist, or qualified examiner; or (2) demonstrates threatening physical or verbal behavior, such as violent, suicidal, or assaultive threats, actions, or other behavior, as determined by a physician, clinical psychologist, qualified examiner, school administrator, or law enforcement official.

- Upon information and belief, at no time on or around July 17, 2023 did any physician, clinical psychologist, or qualified examiner determine that Kuhlman communicated a serious threat of physical violence against a reasonably identifiable victim or posed a clear and imminent risk of serious physical injury to himself or another person, nor did Hines or Cunningham have knowledge of facts supporting such a conclusion.

- Upon information and belief, at no time on or around July 17, 2023 did any physician, clinical psychologist, or qualified examiner directly or indirectly notify ISP that Kuhlman communicated a serious threat of physical violence against a reasonably identifiable victim or posed a clear and imminent risk of serious physical injury to himself or another person, nor did Hines or Cunningham have knowledge of facts supporting such a conclusion.

5

- Upon information and belief, at no time on or around July 17, 2023 did any physician, psychologist, qualified examiner, school administrator or law enforcement officer notify ISP of facts showing that Kuhlman demonstrated any threatening physical or verbal behavior; any violent, suicidal or assaultive threats or actions; any behavior similar to any threatening physical or verbal behavior; or any behavior similar to any violent, suicidal or assaultive threats or actions, unless engaging in defense of others with a valid CCL and firearm while not shooting at anyone or even firing the firearm, and subsequently following all police instruction constitutes such behavior, nor did Hines or Cunningham have knowledge of facts supporting such a conclusion.

- At no time while Kuhlman was defending his mother's safety - from an individual who was mentally unstable and/or under the influence of drugs - did Kuhlman exhibit any of the above-described behavior. Hines and Cunningham knew this as Hines (A.) did not arrest Kuhlman and (B.) returned Kuhlman's firearm before leaving the scene of Kuhlman's mother's house. Therefore, what Hines wrote and Cunningham approved for the purpose of labeling Kuhlman as a clear and present danger and having his firearm rights revoked was false.

- Kuhlman has received a copy of the report written and submitted by Hines, and reviewed and counter-signed by Cunningham as Hines's supervisor. In the report, Hines first characterized the incident as a "well-being check," as opposed to a call from an elderly woman terrified about the mentally-ill stranger at her back door. In fact, at no time in the Clear and Present Danger report did Hines and

6

Cunningham even note that the original call to the NPD came from Kuhlman's mother, or why; nor did the report provide any context of why Hines went to Kuhlman's mother's house in the first place.

- Hines and Cunningham noted in the report that "[a]t no point did I see [mentally-ill stranger] as a threat in the couple seconds I saw Robert point the gun at him," as if those were the only "couple seconds" that were relevant to the situation. Hines and Cunningham also falsely wrote and submitted to ISP in the Clear and Present Danger report that Kuhlman was charged with aggravated assault.

- In the Clear and Present Danger report, Hines also noted that he "told [Kuhlman] to put the gun down, which he did," and that Kuhlman "complied with all other commands." Finally, Hines noted that Kuhlman said he was in fear for his "grandmother" (sic), and was worried that the stranger was having a mental breakdown, perhaps on drugs, and that he did not know what was in the stranger's bag. Despite these statements, Hines and Cunningham submitted the Clear and Present Danger report, anyway.

- Hines and Cunningham knew that Kuhlman – who was lawfully exercising the right of defense of his mother – was not a dangerous person. Upon information and belief, Hines, Cunningham, and the NPD also knew that the mere act of submitting a Clear and Present Danger report about Kuhlman would almost certainly result in his FOID card and Second Amendment rights being stripped by

7

the ISP. Indeed, in submitting the Clear and Present Danger report with maliciousness and in bad faith, this was Hines's and Cunningham's intent.

- Despite the wrongfulness of Hines's and Cunningham's Clear and Present Danger report, Kuhlman complied fully with the ISP's revocation and surrendered his combined FOID/CCL and his firearm to the NPD.

- By so burdening Kuhlman's ability to possess a FOID Card, and likewise a CCL, Hines and Cunningham have not only unjustifiably denied him his rights but has potentially effectively imposed a five-year ban – up to as much as an unending ban - on Kuhlman's right to keep and bear arms for self-defense. At a minimum, Hines and Cunningham have indefinitely denied Kuhlman his rights while he attempts to navigate an intrusive, humiliating, and unwarranted appeal with the Illinois FOID Card Review Board.

- As a result of Hines's and Cunningham's actions and directions, Kuhlman suffered from violations of his constitutional rights leaving him unable to defend himself or his family against physical threat with a firearm if necessary and otherwise enjoy his Second Amendment right, plus physical and emotional harm.

## ARGUMENT

### Standard for Motion to Dismiss

#### F.R. Civ. P. 12(b)(6) Standard

"[W]hen considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the Court takes the allegations in the complaint as true, viewing all facts -- as well as any inferences reasonably drawn

therefrom -- in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Bell Atlantic Corp.*, 127 S. Ct. at 1955 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n. 1 [ ] (2002))." *Manuel v. Lyles*, 2008 U.S. Dist. LEXIS 51433, 5-6 (N.D. Ill. June 30, 2008).

Generally, a dismissal pursuant to Rule 12(b)(6) is appropriate only if there is no set of facts consistent with the pleadings under which the plaintiffs could obtain relief. *See Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812 (7th Cir. 2016). To survive such a motion the factual allegations of the complaint, accepted as true for the purpose motion, need only be "plausible" and rise above mere speculation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A well-pleaded complaint may proceed even if it appears 'that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.' *Bell Atlantic Corp.*, 127 S. Ct. at 1965. Nevertheless, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp.*, 127 S. Ct. at 1973-74 & n.14." *Manuel*, 2008 U.S. Dist. LEXIS 51433 at **5-6.

I. <u>KUHLMAN'S COMPLAINT STATES A CLAIM FOR RELIEF.</u>

<u>The FOID Card Act does not bar Kuhlman's claim.</u>

It is not disputed that – generally speaking – the individual Defendants have the authority to submit clear and present danger reports. However, that is not *carte blanche* to lie about an individual and submit false information knowing it will get

9

his licenses revoked and his rights taken away. That is why the statute itself makes the distinction with willful and wanton conduct, and conduct of a lesser culpability. Kuhlman's allegations, which must be taken as true for purposes of Defendants Rule 12(b)(6) Motion, is that the Defendants' conduct was intentional and deliberate, as well as willful and wanton. And the pleaded facts back up that conclusion.

By the time Hines left the scene, he knew Kuhlman's mother was terrified and called the police, that Kuhlman was at the scene with his son as well as his mother in the house, that Kuhlman was licensed to carry his handgun, that he did not fire his weapon or injure anyone, that the trespasser had an opaque bag, and that he required mental health treatment. None of this leads to the conclusion that Kuhlman met the standard of a clear and present danger. But the Defendant chose to submit the report to ISP, anyway.

It is absolutely irrelevant and disingenuous to argue that since ISP is the entity that actually revoked Kuhlman's FOID card and CCL, that the Defendants should escape liability. This is because it is true – as well as pleaded in the Complaint – that the *only* reason the ISP revoked Kuhlman's FOID card and CCL was because Hines and Cunningham intentionally submitted the false clear and present danger report. Had they not done so, ISP would have had no basis for revocation, or even to think of Kuhlman at all.

<u>Kuhlman has pleaded willful and wanton conduct under Illinois state law.</u>

Defendants argue that "in order to successfully allege willful and wanton conduct, a plaintiff must allege facts showing a course of conduct amounting to more than just inadvertence, unskillfulness, inaction, incompetence or simple negligence. *Knapp v. Hill*, 276 Ill.App.3d 376, 383, 657 N.E.2d 1068, 1073 (1st Dist. 1995)." (Motion, p.6). But Kuhlman has done exactly that. The facts as pleaded in Kuhlman's Complaint, and as described above, do not lend themselves to *any* of the conclusions cited in the *Knapp* decision above as applied to Defendants. There is only the allegation of deliberate, intentional conduct. "*See Doe–3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 19 ("a plaintiff must allege either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare").

Additionally, should the Court determine that the elements of willful and wanton conduct are not pleaded, Kuhlman requests leave to replead.

II. <u>THE INDIVIDUAL DEFENDANTS DO NOT DESERVE QUALIFIED IMMUNITY.</u>

There is no doubt the Second Amendment right is clearly established. The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." And the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008) stressed that "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-

11

by-case basis whether the right is really worth insisting upon." *Id.* at 634 (emphasis deleted).

"Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id.*, 554 U.S. at 634-635. The Second Amendment "is fully applicable against the States." *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010).

St. George Tucker wrote: "Wherever . . . the right of the people to keep and bear arms is, under any colour or pretext whatsoever, prohibited, liberty, if not already annihilated, is on the brink of destruction." Tucker, *View of the Constitution of the United States,* 1 BLACKSTONE'S COMMENTARIES, ed. app. at 300 (1803). *Heller* endorsed this passage from Tucker. 554 U.S. at 606.

In *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Supreme Court held that the fundamental Second Amendment right of defense applied outside the home as well. *Id.* at 33. Of course, the Seventh Circuit had already held this in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012). So the question becomes whether the Defendants have qualified immunity for intentionally using false information to have this fundamental right taken away from Kuhlman.

"To determine whether a right is clearly established, the Court looks to controlling precedent from both the Supreme Court of the United States and the Seventh Circuit Court of Appeals, and if there is no such precedent it 'cast[s] a wider net' and examines 'all relevant case law to determine whether there was such

a clear trend in the case law that [it] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.' *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 731 (7th Cir. 2013) (quotations and citations omitted). As set forth by the Supreme Court, 'a court must ask whether it would have been clear to a reasonable officer that the alleged conduct 'was unlawful in the situation he confronted.' If so, then the defendant officer must have been either incompetent or else a knowing violator of the law, and thus not entitled to qualified immunity.'" *Stefanov v. McIntyre*, 2023 U.S. Dist. LEXIS 24517, *17-18 (S.D. Ind. 2023); *see also District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

"While there does not have to be 'a case directly on point,' existing precedent must place the lawfulness of the particular arrest "beyond debate." *See Wesby*, 583 U.S. at 64.

Contrary to the Defendant's assertions, the right to not have one's freedom and liberty taken away by the false reporting of the police has been long-established. For example, in *McCalister v. Stevens*, 2019 U.S. Dist. LEXIS 170123 (S.D. Ind. 2019), an officer submitted a false report that got the plaintiff arrested. Though the charges were eventually dismissed, the officer's civil claim defense of qualified immunity was denied:

> The right to be free from arrests unsupported by probable cause has long been clearly established. *Id.* at 250; *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). When that right is violated, '[a] police officer who files a false report may be liable . . . even if he did not conduct the arrest himself.' *Acevedo v. Canterbury*, 457 F.3d 721, 723 (7th Cir. 2006).

*McCalister*, 2019 U.S. Dist. LEXIS 170123, *5-6.

13

The Court went on to hold "[v]iewing the many disputed and uncertain facts in [plaintiff's] favor, a reasonable jury could conclude that filing the false report was either intentional or incompetent. Such an error cannot supply arguable probable cause:

> [I]f an officer submitted an affidavit that contained statements that he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, not only is his conduct the active cause of the illegal arrest, but he cannot be said to have acted in an objectively reasonable matter.

*Id.* at *9 (internal citation omitted).

In *Daly v. City of Stickney*, 2014 U.S. Dist. LEXIS 162917 (N.D. Ill. 2014), the Court held that "[p]laintiff has alleged that Warner and Billingsley conspired with Defendant Officers and filed a false allegation of child neglect in order to have him arrested. Based on these allegations, Plaintiff has sufficiently pled no reasonable official could have believed that filing a false report under ANCRA to have someone arrested would be consistent with constitutional norms. *See Peck*, 2006 U.S. Dist. LEXIS 67145 at *6. Therefore, as alleged, Defendants would not be entitled to qualified immunity." *Daly*, 2014 U.S. Dist. LEXIS 162917, *6-7.

In this case, the Second Amendment is substituted for the Fourth Amendment. But the clearly-established wrongful conduct – the means by which the Defendants stripped away Kuhlman's rights and freedoms – is exactly the same. And whether we are talking about the loss of physical freedom, the ability to defend one's self and loved ones, or the custody of one's children, when the police knowingly

14

use false information as justification for bringing the hammer of law enforcement down on a civilian, they are not entitled to qualified immunity when their wrongful actions are exposed.

As noted in Kuhlman's Complaint, according to an Illinois State Police press release dated November 27, 2023: "Between January and September 2023, ISP investigated 10,144 Clear and Present Danger Reports. From those, 4,212 resulted in revoking a card or an application. 4,912 individuals involved in a Clear and Present Danger investigation were found to not have a FOID card or a pending application." https://isp.illinois.gov/Media/CompletePressRelease/876 (last reviewed April 24, 2024).

This means that during that nine-month period, when Kuhlman's FOID card was revoked on this alleged basis, of the 5232 reported persons who had active FOID cards or applications, 80.5% of reported persons had their rights stripped based solely on the reporting police officer's say-so.

Therefore, Hines and Cunningham must have known when they submitted the factually inaccurate clear and present danger report about Kuhlman to the ISP, that it would result in Kuhlman's Second Amendment rights being stripped away.

The Defendants' behavior has none of the usual traits for which the Supreme Court permits qualified immunity. Most qualified immunity cases involve state actors engaged in legitimate policing, who make reasonable or negligent mistakes about the law. These mistakes are often made by police in the heat of the moment, in difficult circumstances. In contrast, the individual Defendants, through their

15

false reporting, intentionally subverted Kuhlman's rights under *Heller*, *McDonald*, *Moore*, and *Bruen*. This action was not a split-second judgment, but made deliberately. And while the police using this particular recognized prohibited action to strip away this particular fundamental constitutional right is not explicitly on the books, the Supreme Court has never said that qualified immunity protects state actors who intentionally seek to violate a recognized constitutional right simply because the legal artifice they employ has not been the subject of a prior court decision.

Qualified immunity was never meant to facilitate state actors' deliberate efforts to undermine constitutional rights. This Court should hold that qualified immunity does not protect the Defendants' wrongful actions, which were a transparent attempt to prohibit Kuhlman's possession and public carrying of arms in defiance of *Bruen* and *Heller*.

*See* Robert Lieder, *Should State Officials Receive Qualified Immunity for Creatively Resisting Bruen?*, January 17, 2023, https://standinghisground.com/2023/01/17/should-state-officials-receive-qualified-immunity-for-creatively-resisting-bruen/ (last reviewed April 24, 2024).

The individual Defendants attempt to escape liability by improper assumptions and obfuscation. For example, the Defendants cite to *Baird v. Renbarger*, 576 F.3d 340 (7th Cir. 2009), a Fourth Amendment case where a rogue police officer pulled a submachine gun on a group of non-violent individuals over a suspected switched VIN number (*Id.* at 344-45). The Defendants do this to smear

16

Kuhlman, who was defending himself, his son, and his terrified mother against the mentally-ill person trespassing on the mother's property while sticking his hand into an opaque bag to grab who-knows-what. Further, Kuhlman stopped doing so and surrendered his firearm when the police (including Hines) arrived. Kuhlman was not charged, his firearm was returned, and the trespasser was reportedly taken to a hospital. No shots were fired, and no one was hurt. By comparison to the unreasonable behavior in *Baird*, Kuhlman acted extremely reasonably. But *still* the Defendants chose to report Kuhlman to the Illinois State Police and have his rights taken away.

None of the other cases cited by the Defendants are apposite. *United States v. Skoien*, 614 F.3d 638, 645 (7th Cir. 2010) (*en banc*) involved a person convicted of domestic violence illegally possessing a weapon, while *Berron v. Ill. Concealed Carry Licensing Rev. Bd.*, 825 F.3d 843, 846 (7th Cir. 2016) and *White v. Illinois State Police*, 15 F.4th 801, 812 (7th Cir. 2021) involved challenges to denials of CCL applications. They do not support the individual Defendants' conduct in any way.

Therefore, at the very least, Kuhlman has stated a valid claim that the Defendants deliberately violated his clearly-established Second Amendment rights *via* the clearly-established forbidden practice of intentionally submitting false reports. The Defendants' Motion does not show that there is no set of facts consistent with Kuhlman's Complaint upon which relief could be granted. The Defendants' Motion to Dismiss should be denied so that Kuhlman may have the opportunity to prove his case.

III. <u>KUHLMAN'S CLAIM AGAINST THE TOWN SHOULD NOT BE DISMISSED.</u>

The Town's Motion to dismiss it puts the cart before the horse. Its entire argument is "if the individuals are not liable, neither is the Town." As a general statement, Kuhlman agrees. *However*, since under the facts of this case Kuhlman states a valid claim against Hines and Cunningham, <u>and</u> Kuhlman asserts Hines and Cunningham will ultimately be liable, then the Town's Motion is meritless. Its Motion to Dismiss should be denied along with that of the individual Defendants.

<u>CONCLUSION</u>

WHEREFORE, the Plaintiff, ROBERT K. KUHLMAN, requests this Honorable Court deny the Defendants' Motion to Dismiss in its entirety, and for any and all further relief as this court deems appropriate.

Date:  April 24, 2024                                 /s/ David G. Sigale
                                                     Attorney for Plaintiff

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
630.452.4547
dsigale@sigalelaw.com

## CERTIFICATE OF COMPLIANCE

I, David G. Sigale, attorney for Plaintiff, certify that this Memorandum complies with the type volume limitation of C.D. Ill. L.R. 7.1(B)(4). The Memorandum contains 4271 words.

Dated: April 24, 2024         /s/ David G. Sigale
                              David G. Sigale


David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
630.452.4547
dsigale@sigalelaw.com

## CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING

The undersigned certifies that:

    1.    On April 24, 2024, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

    2.    Pursuant to F.R. Civ. P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.


                              /s/ David G. Sigale
                                  Attorney for Plaintiff

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
630.452.4547
dsigale@sigalelaw.com