E-FILED
Monday, 26 August, 2024  01:07:23 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| ROBERT K. KUHLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-1065 |
| | ) | |
| OFFICER NICHOLAS HINES (Star | ) | |
| #20257), | ) | |
| OFFICER SERENA CUNNINGHAM | ) | |
| (Star #19306), | ) | |
| and the TOWN OF NORMAL, ILLINOIS, | ) | |
| an Illinois municipal corporation, | ) | |
| | ) | |
| Defendants. | ) | |

# <u>ORDER</u>

This matter is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim. (Doc. 10). Plaintiff has responded with a Memorandum in Opposition to the Motion. (Doc. 12). The Motion is now ripe for review. For the following reasons, it is denied.

## BACKGROUND[1]

Plaintiff Robert K. Kuhlman is a resident of Normal, Illinois. (Doc. 1 at 2). On July 17, 2023, Plaintiff's mother, who also lives in Normal but at a different address, heard a knock at her back door. (Doc. 1 at 3). When she answered the door, a man

---

[1] All facts recited in this section and referenced throughout the Order are taken from Plaintiff's Complaint, as Plaintiff's non-conclusory allegations are to be assumed true when weighing a motion to dismiss. *United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 738–39 (7th Cir. 2021); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The recitation of facts from the Complaint is not a finding on the part of this Court as to the truth of any allegations.

unknown to her asked to borrow her phone, and she agreed. (Doc. 1 at 3). Concerned because the stranger did not leave her property after using the phone, Plaintiff's mother called the police emergency number and then Plaintiff. (Doc. 1 at 3). She explained the situation to her son and told him she thought the stranger might have a mental illness and that she felt threatened by him. (Doc. 1 at 3).

Plaintiff and his adult son went to Plaintiff's mother's house. (Doc. 1 at 3). On the way, Plaintiff spoke on the phone with his mother again; she sounded distressed and told him to hurry. (Doc. 1 at 3). When Plaintiff arrived at his destination, police were not yet on the scene. (Doc. 1 at 4). Observing a man sitting in a chair on his mother's back porch and holding a plastic grocery bag, Plaintiff ordered the stranger to leave the property. (Doc. 1 at 4). The man did not leave and began reaching his hand into the bag. (Doc. 1 at 4). Plaintiff drew his pistol and pointed it at the man, holding him at gunpoint until officers from the Normal Police Department ("NPD") arrived. (Doc. 1 at 4).

The responding officers, among them Defendant Nicholas Hines, told Plaintiff to give them his gun; Plaintiff complied. (Doc. 1 at 4). After finding the stranger on the porch to be unarmed, officers transported him to a hospital, as he was "believed and/or determined by the NPD to be suffering from a mental illness." (Doc. 1 at 4). At some point during the encounter, the NPD officers returned Plaintiff's firearm to him, and Plaintiff and his son went home. (Doc. 1 at 4). The gun was not fired during the incident, and he was not arrested or detained by law enforcement. (Doc. 1 at 4).

Later, Defendant Hines wrote and signed (and Defendant Serena Cunningham, his supervisor, counter-signed) a report submitted to the Illinois State Police ("ISP") pursuant to a section of Illinois's Firearm Owners Identification Card Act ("FOID Act") providing that a law-enforcement officer who determines any person "to pose a clear and present danger to himself, herself, or to others . . . shall, within 24 hours of making the determination, notify the ISP that the person poses a clear and present danger." 430 ILCS 65/8.1(d).[2]

In the report, which Plaintiff states he has read, Defendant Hines wrote that he and the other officers were at the address in question to conduct a "well-being check" and did not mention that Plaintiff's mother had initiated the encounter by calling emergency services to express concern about a trespasser. (Doc. 1 at 7). Defendant Hines also noted that he did not perceive the stranger to be a threat, and he stated—incorrectly—that Plaintiff had been charged with aggravated assault. (Doc. 1 at 7–8). Finally, he wrote that Plaintiff complied with the officers' commands and told officers he had been afraid for the safety of his grandmother (apparently an

---

[2] "Clear and present danger" is defined in the FOID Act as

a person who:
(1) communicates a serious threat of physical violence against a reasonably identifiable victim or poses a clear and imminent risk of serious physical injury to himself, herself, or another person as determined by a physician, clinical psychologist, or qualified examiner; or
(2) demonstrates threatening physical or verbal behavior, such as violent, suicidal, or assaultive threats, actions, or other behavior, as determined by a physician, clinical psychologist, qualified examiner, school administrator, or law enforcement official.

430 ILCS 65/1.1.

erroneous reference to Plaintiff's mother) because he believed the stranger to be under the influence of drugs or experiencing a mental-health crisis. (Doc. 1 at 8).

Upon receiving a Clear and Present Danger Report ("CPD Report") such as the one Defendants Hines and Cunningham (hereinafter "Defendant Officers") submitted, the ISP is tasked with determining "whether to revoke the person's FOID [Firearm Owner's Identification] card under Section 8 of this Act." 430 ILCS 65/8.1(d). The ISP decided to revoke Plaintiff's FOID Card and, under 430 ILCS 66/70(h), his Concealed Carry License ("CCL"), making it illegal for him to possess a firearm or carry one in public within the state of Illinois unless he successfully applies for reinstatement of his FOID Card and CCL after a period of five years. (Doc. 1 at 5, 9–11). As directed by the ISP, Plaintiff surrendered both documents and his pistol to the NPD. (Doc. 1 at 9). Plaintiff states that he has suffered "mental . . . anguish and humiliation" as a result of the loss of his Second Amendment right to bear arms in defense of himself and his family. (Doc. 1 at 12).

Plaintiff has filed suit against Defendant Officers in their individual capacities and against their employer, Defendant Town of Normal. (Doc. 1 at 1–2).

## LEGAL STANDARD

To survive a 12(b)(6) motion for failure to state a claim, the plaintiff must "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing

*Twombly*, 550 U.S. at 556). Courts will "accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving party." *United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 738-39 (7th Cir. 2021). The complaint only needs enough facts "to present a story that holds together." *Twombly*, 500 U.S. at 545. However, legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678. A claim cannot survive if it merely recites the elements of the cause of action, *id.* at 555, and courts "may reject sheer speculation, bald assertions, and unsupported conclusory statements," *Taha. v. Int'l Bhd. Of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). Finally, while plausible does not mean probable, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff brings three counts against Defendants. Count III is a state-law claim for indemnification against Defendant Officers' employer, the Town of Normal. (Doc. 1 at 14). The two underlying claims, one brought under federal law and the other under state law, are only against the two officers, sued in their individual capacities. (Doc. 1 at 11, 12). Plaintiff properly invokes the subject-matter jurisdiction of this Court under 28 U.S.C. § 1331 as to Count I, which raises a federal question under 42 U.S.C. §1983 on the face of the Complaint. Counts II and III "form part of the same case and controversy" as Count I, and thus the Court may exercise supplemental jurisdiction over these state-law claims under 28 U.S.C. § 1367(a) and elects to do so.

## I.   Count I: Violation of Rights Under the Second Amendment

In Count I, Plaintiff brings a claim under 42 U.S.C. § 1983, which creates a private right of action where a plaintiff's rights under the United States Constitution

5

or federal law have been violated by a defendant acting under color of state law. *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994). Here, Plaintiff claims Defendant Officers violated his rights under the Second Amendment[3] to the U.S. Constitution, as applied to the states via the Fourteenth Amendment. (Doc. 1 at 12); s*ee McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010).

First, it is helpful to identify what Plaintiff is *not* claiming. The Complaint does not challenge the constitutionality of the provision of Illinois law requiring law-enforcement officers to submit reports to the ISP concerning persons they believe pose a "clear and present danger," even though the Complaint is filled with concern about the extrajudicial nature of the process by which he lost the ability to legally possess a firearm in Illinois. (*See, e.g.*, doc. 1 at 5). Plaintiff does not seek an injunction requiring the reinstatement of his FOID Card or CCL or the return of his pistol, and

---

[3] On the first page of the Complaint, Plaintiff states that his Fourth Amendment rights were violated. (Doc. 1 at 1). However, in the next sentence, Plaintiff writes that "as a result of police misconduct and abuse more fully described below, Kuhlman was unlawfully deprived of his constitutional right to self-defense"—a right protected by the Second Amendment, *see District of Columbia v. Heller*, 554 U.S. 570, 628 (2008), and not found in the Fourth Amendment, which protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures," U.S. Const. amend. IV. Because the Fourth Amendment appears nowhere else in the Complaint, and Count I itself is styled and alleged as a Section 1983 claim whose underlying basis is that Defendant Officers infringed on Plaintiff's rights under the Second Amendment (applied to the State of Illinois and its subdivisions via the Fourteenth Amendment), the Court will assume Plaintiff's reference to the Fourth Amendment was a typographical error. To the extent Plaintiff intended to bring a Section 1983 claim asserting a Fourth Amendment violation, it is dismissed with prejudice, because inasmuch as any seizure of Plaintiff's property (his FOID Card, CCL, and firearm) took place, Plaintiff alleges this was done by the ISP, not Defendants here, and does not address Defendants' role in any potential Fourth Amendment violation. (Doc. 1 at 5).

in fact, Defendants lack the authority to give him that relief, even if NPD physically possesses the documents and gun, because their revocation and surrender were ordered by the ISP, and only the ISP or a court may authorize their reinstatement. *See* Ill. Adm. Code tit. 20, §§ 1230.70(a), 1230.120 (2022). Neither does Plaintiff seek a declaratory judgment as the constitutionality of the "clear and present danger" procedure. He asks only for actual, compensatory, and punitive damages. (Doc. 1 at 12). Thus, the Court does not construe Plaintiff's Section 1983 claim as a facial constitutional challenge to the reporting requirement in 430 ILCS 65/8.1(d) or any other provision of the FOID Act,[4] but as a claim that the individual officers named as defendants wrongfully filed a report that they should have known was highly likely to result in the loss of his ability to legally own, possess, or carry firearms for self-defense.

---

[4] Plaintiff also complains that the process for having one's FOID Card reinstated is unduly burdensome, "compels the individual to prove a negative" (that he is no longer a danger to himself or others), and potentially imposes an "unending ban" on his possession and bearing of arms. (Doc. 9–11). The reinstatement requirements are found at Ill. Adm. Code tit. 20, § 1230.120 (2022). Plaintiff conflates these requirements with the procedure for appealing a revocation less than five years after its imposition, set forth at Ill. Adm. Code tit. 20, § 1230.70(a) and in the "FOID Appeal Requirements/Checklist" document promulgated by the ISP, https://isp.illinois.gov/StaticFiles/docs/FirearmsSafety/Checklists/Final%20Checklists/C&P%20Less%20Than%205%20Yr%20Prohibitor%20Requirements%20Checklist.pdf (last visited Aug. 22, 2024); the standard for reinstatement is higher within the first five years of revocation than thereafter. Regardless, the constitutionality of neither procedure is before the Court at this time. Plaintiff does not indicate he has appealed the revocation of his FOID Card, and if and when he does so, the disposition of his appeal will be solely in the hands of the ISP and, if denied by the ISP, a court. No law or regulation gives Defendants a role in deciding whether Plaintiff's FOID Card and/or CCL will be reinstated in the future. Thus, Plaintiff's allegations as to the difficulty and/or unconstitutionality of the reinstatement process will be disregarded at this stage.

A.    *Failure to State a Claim*

The bulk of the Motion to Dismiss is concerned with immunity defenses, which will be discussed in the sections to follow. Defendants raise only one argument as to why Plaintiff fails to state a claim in Count I: Defendant Officers did not deprive Plaintiff of his right to keep and bear arms; the Illinois State Police did. (Doc. 10 at 6). This argument speaks to causation: whether Plaintiff sufficiently alleges Defendants caused the harm complained of in Count I.

"In assessing causation in § 1983 cases, we look to general principles of causation from tort law." *Hunter v. Mueske*, 73 F.4th 561, 567–68 (7th Cir. 2023). These require the presence of both causation-in-fact ("but-for" causation) and proximate, or "legal," causation. *Id.* at 568. In his Response, Plaintiff explains that on the factual allegations of the Complaint, Defendant Officers' actions were the but-for cause of his deprivation: "[T]he *only* reason the ISP revoked Kuhlman's FOID card and CCL was because Hines and Cunningham intentionally submitted the false clear and present danger report." (Doc. 1 at 10). Defendant Officers do not and cannot deny this; state statute does not direct or authorize the ISP to independently seek out FOID Card holders who may pose a clear and present danger, but instead creates a mechanism that relies on law-enforcement officers and other individuals identified in the statute to report qualifying conduct to the ISP. 430 ILCS 65/8.1. As for proximate causation, Plaintiff asserts that Defendant Officers knew or should have known that more than eighty percent of the CPD reports submitted to the ISP concerning people who hold FOID Cards result in their revocation and, thus, it was foreseeable Plaintiff

8

would lose his ability to legally possess firearms as a result of their actions. (Doc. 1 at 8).

Generally speaking, "[a]n official causes a constitutional violation if he sets in motion a series of events that defendant knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights." *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1012 (7th Cir. 2000) (citing *Morris v. Dearborne*, 181 F.3d 657, 672 (5th Cir. 1999)). An independent decisionmaker does not necessarily break the chain of causation. *See, e.g.*, *Winder v. Leak*, 790 F.Supp. 1403, 1408 (N.D. Ill. 1992) ("In the absence of any evidence that defendants . . . had any influence over the Board proceedings, we cannot conclude that the custom of filing the disciplinary reports, whatever the motivation, was the proximate cause of Winder's injuries."); *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988) ("An independent intermediary breaks the chain of causation unless it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant."); *compare with Morris*, 181 F.3d at 673 (finding the intervening decisions of child welfare officials and a judge did not protect defendant, who filed a false report of abuse, from liability for harms to the child, because defendant fabricated false evidence for inclusion in the initial report and continued to do so in future proceedings); *but see Jones v. City of Chicago*, 856 F.2d 985, 993–94 (7th Cir. 1988) ("[T]he issuance of an arrest warrant will not shield the police officer who applied for the warrant from liability for false arrest if 'a reasonably well-trained officer in [his] position would have known that his affidavit failed to establish probable cause.' ").

9

Here, Plaintiff does not allege Defendant Officers exerted any continuing influence over the ISP's administrative processes after submitting their report. However, like the police officer whose untrue statement in a warrant application continues to taint a criminal proceeding despite the subsequent involvement of other, independent parties, Defendant Officers set into motion a deliberative process that was based upon falsehoods. Plaintiff even alleges that Defendant Officers went beyond reporting facts and specifically recommended to the ISP that the agency ought to revoke Plaintiff's FOID Card. (Doc. 1 at 5). With no facts before the Court at this stage regarding the ISP's procedure for investigating and acting on CPD Reports (and whether, for example, a reasonable law-enforcement officer would have expected the ISP to confirm statements regarding criminal charges against subjects of reports), it cannot be said that Defendant Officers' alleged fabrication of a criminal charge against Plaintiff and omission of key facts about the encounter in question were not the proximate cause of the administrative decision stripping Plaintiff of his rights.

Defendant Officers' Motion to Dismiss for Failure to State a Claim is denied as to Count I.

B.  *Immunity Under State Law*

Despite being brought under Rule 12(b)(6), Defendant Officers' Motion is primarily devoted to raising two immunity defenses: qualified immunity, and immunity under state law.[5] The propriety of this approach, and whether this Court

---

[5] Defendants do not distinguish between Counts I and II (the two claims against the individual officers) when raising their state-law and qualified-immunity defenses. These will be discussed under Count I in this Order, and the Court notes here that

may resolve the qualified-immunity issue at this stage, will be discussed below. First, however, the Court may dispense briefly with Defendant Officers' argument that they are immune from suit because of the FOID Act's reporter-immunity provision.

Illinois's FOID Act establishes that "[t]he physician, clinical psychiatrist, qualified examiner, law enforcement officer, or school administrator making the [clear and present danger] determination or his or her employer shall not be held criminally, civilly, or professionally liable for making or not making the notification required under this subsection, except for willful or wanton misconduct." 430 ILCS 65/8.1(d). Defendant Officers state (with little in the way of argument to support their assertion) that the Complaint does not sufficiently plead they acted with a willful or wanton state of mind, and thus they are immune from any action against them based on their reporting activities under the statute. (Doc. 10 at 6–7). However,

> [c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985 cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise, and the supremacy clause of the Constitution insures that the proper construction may be enforced. *See McLaughlin v. Tilendis*, 398 F.2d 287, 290 (7th Cir. 1968). The immunity claim raises a question of federal law.

*Martinez v. State of Cal.*, 444 U.S. 277, 284 n.8 (1980). Therefore, the immunity reporters such as Defendant Officers have under state statute offers them no

---

neither is an affirmative defense to Count II (willful and wanton conduct under state law). The FOID Act explicitly exempts individuals who have acted willfully or wantonly from its grant of immunity from civil suit, 430 ILCS 65/8.1(d), but as to Count II, Defendant Officers' contention that Plaintiff did not adequately allege their behavior was willful or wanton is an argument for dismissal under Rule 12(b)(6), not an affirmative defense. Meanwhile, qualified immunity is not a defense that can be applied to state-law negligence-type claims.

protection from Count I, a claim authorized under Section 1983 and implicating federal constitutional rights, regardless of whether Plaintiff alleges Defendant Officers' misrepresentations in the CPD Report were willful and wanton.

C.   *Qualified Immunity*

Defendant Officers also claim in their Motion to Dismiss that they are entitled to qualified immunity. (Doc. 10 at 7–8).

"The doctrine of qualified immunity shields government officials, who are sued in their individual capacity for money damages, for 'conduct [that] does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Int'l Action Ctr. v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The two questions posed by a qualified-immunity defense—whether a statutory or constitutional right was violated, and whether the right was clearly established at the time of the complained-of conduct—may be considered in either order, "and a negative answer to either question entitles the official to the defense." *Alexander v. McKinney*, 92 F.3d 553, 556 (7th Cir. 2012); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling in part *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

"[C]ourts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses"; rather, the availability of an affirmative defense should be determined on a motion for judgment on the pleadings as permitted under Rule 12(c). *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Defendants misunderstand the nature of an affirmative defense and the type of motion they have filed when they argue that "Plaintiff has failed to allege facts that

demonstrate Defendants Hines and Cunningham reasonably should have known that their 'Clear and Present Danger' report to the Illinois State Police violated his Second Amendment rights" (doc. 10 at 7), because Rule 12(b)(6) and other federal pleading rules do not require a plaintiff to anticipate affirmative defenses in order to survive a motion to dismiss for failure to state a claim. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

A court may determine the qualified-immunity issue, even on a motion to dismiss, "when all the facts necessary to rule on the affirmative defense are properly before the court," *United v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015), and "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense," *Lewis*, 411 F.3d at 842; *see also Mooney v. Ill. Ed. Ass'n*, 372 F. Supp. 3d 690, 697–98 (C.D. Ill. 2019). That is not the case here. Plaintiff's allegations, taken as true, adequately state a claim for relief under Section 1983, allowing him to avoid dismissal pursuant to Rule 12(b)(6). But he has not yet put forward evidence in support of his allegations, nor have Defendant Officers admitted or denied having included a false statement in or having omitted material facts from the CPD Report— intentionally or otherwise.

Their only argument for qualified immunity (aside from their incorrect characterization of Plaintiff's pleading obligations) is that "the Seventh Circuit has held that 'gun pointing when an individual presents no danger is unreasonable,' " (doc. 10 at 7), and that Plaintiff therefore has not identified a clearly established right to point his gun at a trespasser without having his freedom to bear arms curtailed as

a result. Plaintiff, of course, alleges that the man at whom he pointed his gun *did* appear to present a danger—or at least that Plaintiff was not unreasonable in believing he did. (Doc. 1 at 4). Furthermore, Defendant Officers' framing of their qualified-immunity defense fails to address the argument Plaintiff advances in his Reply: that they violated his clearly established right not to be deprived of his constitutional rights on the basis of a false report made by the police. (Doc. 12 at 13–15). His allegations regarding the various misrepresentations made about him, his conduct, and the circumstances that gave rise to the CPD determination are need of development through the discovery process, after which Defendant Officers may renew their qualified-immunity defense as part of a motion for summary judgment. At this stage, it would be premature to find Defendant Officers either entitled to qualified immunity or conclusively not entitled to it.

## II.    Count II: Willful and Wanton Conduct (State Law)

Under Illinois law, "there is no separate, independent tort of willful and wanton conduct. . . . Rather, willful and wanton conduct is regarded as an aggravated form of negligence." *Jane Doe-3 v. McLean Cty. Unit Dist. No. 5 Bd. of Directors*, 2012 IL 112479, ¶ 19 (2012) (citing *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 235 (2010)). A plaintiff must plead duty, breach, causation-in-fact and legal causation, injury, and "either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." *Doe v. Chicago Bd. of Ed.*, 213 Ill. 2d 19, 28 (2004) (finding that where a student was subject to a plan requiring that he not be left unsupervised with other children and the sole monitor on the student's bus had called in sick, the guardian of a child attacked by the student

14

adequately pleaded willful and wanton conduct by alleging that the defendant school board knew or should have known the assailant was dangerous and unattended). Defendant Officers do not contest that Plaintiff has pleaded most of the elements of negligence: duty, breach, and injury. Causation has been addressed at length. *See supra* pp. 8–10. The sole remaining issue is whether the Complaint sufficiently alleges that Defendant Officers intended to deprive Plaintiff of his constitutional rights or demonstrated a conscious disregard for them.

Plaintiff alleges both knowledge and malicious intent on the part of Defendant Officers. He states under this count that "Hines and Cunningham knew that Kuhlman—in defending his mother from a trespasser who exhibited signs of mental illness and was carrying a bag which may have contained a weapon—was not a clear and present danger under Illinois law, and was in fact exercising reasonable defense of another person," yet they "willfully and wantonly submitted a Clear and Present Danger report to the ISP, knowing it would result in Kuhlman's FOID, CCL, and Second Amendment rights being stripped away from him." (Doc. 1 at 13). In allegations incorporated into Count II, Plaintiff also explains that Defendant Hines included in the CPD Report a provably false statement (that Plaintiff had been charged with aggravated assault in connection with his encounter with the trespasser on his mother's property) and deliberately omitted contextual facts that would have been material to anyone deciding whether Plaintiff's ownership of a firearm was a threat to public safety (that Plaintiff's mother had called 911 for police services because of her fear of the stranger, and that Plaintiff was there because his mother

15

had begged him to come to her home and protect her). (Doc. 1 at 7–8). For her part, Defendant Cunningham approved the report, allegedly despite knowing it misrepresented Plaintiff's conduct. (Doc. 1 at 7).

These allegations, assumed to be true at this stage, are sufficient to state a claim under Illinois law based on the theory that Defendant Officers behaved in a willful or wanton manner, such that they are not immune to suit under the FOID Act. Plaintiff has pleaded that Defendant Officers intended to cause him to be stripped of his right to bear arms and filed a report calculated to achieve this result (doc. 1 at 9) and that they acted without regard for his rights when they submitted such a consequential report without ensuring that it did not contain such glaring falsehoods as criminal charges that (according to Plaintiff) were never filed (doc. 1 at 7–8). Plaintiff has stated a claim under Count II, and Defendant Officers' Motion as to this count is denied.

One point is worth noting as this claim proceeds: because Plaintiff has sued both officers individually and has not sued Defendant Cunningham in her official capacity or claimed that she is liable for her subordinate's conduct under a theory of *respondeat superior*, attention must be paid to what each officer, separately, knew and intended. For example, Plaintiff does not allege Defendant Cunningham witnessed Plaintiff holding the trespasser at gunpoint, yet he alleges that "Hines *and Cunningham* knew that Kuhlman—who was lawfully exercising the right of defense of his mother—was not" a dangerous person. (Doc. 1 at 9) (emphasis added). Defendant Cunningham is named in this action solely because she counter-signed the

CPD Report in her capacity as Defendant Hines's supervisor, but the Complaint sometimes quotes Hines and Cunningham, jointly, as authors of the report (*see* doc. 1 at 7), while attributing other statements in the report to Defendant Hines alone (*see* doc. 1 at 8). Plaintiff adequately states a claim that Defendant Cunningham bears responsibility for signing a document she knew or should have known to contain misrepresentations; however, she may not be held liable for knowing facts or drawing conclusions available only to those officers, such as Defendant Hines, who were on the scene at Plaintiff's mother's house. Plaintiff must take care as he prosecutes his case to establish with clarity the precise nature of Defendant's Cunningham's involvement with the CPD Report and her obligation to ensure its accuracy before signing it and approving its submission to the ISP.

### III.   Count III: Indemnification

The Local Governmental and Governmental Employees Tort Immunity Act (incorrectly referred to by both parties as the Illinois Tort Immunity Act) requires local public entities to pay judgments in tort when their employees are found liable for conduct within the scope of their employment. 745 ILCS 10/9-102. Defendant Town of Normal does not deny that it is a local public entity under the Act, that it employed Defendant Officers during the events described in the Complaint, or that Defendant Officers acted within the scope of their employment when they authored, signed, and submitted the CPD Report concerning Plaintiff. Its Motion as to this count is based solely on its argument that Plaintiff has not pleaded any cognizable claim against its employees, and if they are not liable, then their employer is not

17

liable either. (Doc. 10 at 8). Because the Court has found that Counts I and II survive, Plaintiff may also proceed as to Count III.

CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (doc. 10) is DENIED. Defendants' Answer is due within fourteen (14) days of the date of this Order.


SO ORDERED.

Entered this 26th day of August 2024.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge